# UNITED STATES DISTRICT COURT
для
Eastern District of Wisconsin

In the Matter of the Search of:

LOCATION AND IDENTIFYING INFORMATION, MAINTAINED BY GOOGLE LLC, AND GENERATED BY ELECTRONIC DEVICES AT OR NEAR THE NORTH REDONDO BEACH, POMONA, AND RANCHO CUCAMONGA POST OFFICES

Case No. 19-918M(NJ)

## APPLICATION FOR A SEARCH WARRANT

I, Tyler Fink, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 841(a)(1) and 843(b)

The application is based on these facts: See Affidavit in Support of Application for Search Warrant.

☒ Delayed notice of 180 days (give exact ending date if more than 30 days: 02/26/2020) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Tyler Fink, U.S. Postal Inspector, USPIS
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: August 30, 2019

*Judge's signature*

City and State: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Tyler Fink, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a warrant to search information that is stored at premises controlled by Google, a provider of electronic communications service and remote computing service headquartered in Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a warrant under 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government the information further described in Attachment B.I. The government will then review that information and seize the information that is further described in Attachment B.II.

2. I am a United States Postal Inspector with the United States Postal Inspection Service ("USPIS"), and have been employed by the USPIS since February 2017.

3. The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, 3061 with the enforcement of laws governing the use and movement of the United States Mail, including, but not limited to, the misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, identity theft, and narcotics trafficking involving the United States Mail.

4. I am currently assigned to the Milwaukee Office multi-functional team as well as being placed on the High Intensity Drug Trafficking Area (HIDTA) Interdiction Initiative Task Force. The multi-function team investigates mail theft, fraud, the theft of Postal property, prohibited mailings, controlled substances, and other matters related to the Postal Service. I have received advanced training by the USPIS in the investigation of controlled substances or

proceeds/payments being transported through the United States. The Milwaukee Field Office's multi-function team has intercepted numerous parcels, which were found to contain narcotics or proceeds of narcotics trafficking and other criminal activity. Prior to my employment with the USPIS, I was employed by the City of Creve Coeur, MO Police Department in the Patrol Division for approximately three years as a Police Officer. While working as a Police Officer, I received extensive training in narcotics investigations.

5. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance), and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including one using wiretaps. More specifically, my training and experience includes the following:

   a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;
   b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;
   c. I have participated in several search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;
   d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;
   e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;
   f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

2

g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;
h. I have assisted in court authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;
i. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and
j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

6. I have been the affiant on over 60 warrants in federal court. Based on my training received at the USPIS Career Development Unit, personal experience, on the job training, and working with other Postal Inspectors and Wisconsin HIDTA drug task force officers, I know narcotics, drugs, paraphernalia, controlled substances, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through the USPS system, and I am familiar with many of the methods used by individuals who attempt to use the USPS to illegally distribute controlled substances

7. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance) and 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance) have been committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

3

## JURISDICTION

9. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States in the Eastern District of Wisconsin that has jurisdiction over the offense being investigated.

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

10. Based on my training and experience, I know that cellular devices, such as mobile telephone(s), are wireless devices that enable their users to send and receive wire and/or electronic communications using the networks provided by cellular service providers. In order to send or receive communications, cellular devices connect to radio antennas that are part of the cellular network called "cell sites," which can be mounted on towers, buildings, or other infrastructure. Cell sites provide service to specific geographic areas, although the service area of a given cell site will depend on factors including the distance between towers. As a result, information about what cell site a cellular device connected to at a specific time can provide the basis for an inference about the general geographic location of the device at that point.

11. Based on my training and experience, I also know that many cellular devices such as mobile telephones have the capability to connect to wireless Internet ("wi-fi") access points if a user enables wi-fi connectivity. Wi-fi access points, such as those created through the use of a router and offered in places such as homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

4

12. Based on my training and experience, I also know that many cellular devices feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a mobile device and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a mobile device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by mobile devices within the Bluetooth device's transmission range, to which it might connect.

13. Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the phone can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the app's operation.

14. Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every cellular phone using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

15. In addition, based on my training and experience, I know that Google is offers numerous online-based services, including email (Gmail), navigation (Google Maps), search engine (Google), online file storage (including Google Drive, Google Photos, and Youtube), messaging (Google Hangouts and Google Allo), and video calling (Google Duo). Some services, such as Gmail, online file storage, and messaging, require the user to sign in to the service using their Google account. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address. Other services, such as Google

5

Maps and Youtube, can be used while signed in to a Google account, although some aspects of these services can be used even without being signed in to a Google account.

16. In addition, based on my training and experience, I know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be synced across the various devices on which they may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices.

17. Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist for, and can be downloaded to, phones that do not run the Android operating system, such as Apple devices.

18. Based on my training and experience, I know that Google collects and retains location data from devices running the Android operating system when the user has enabled Google location services. Google then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. In addition, I know that Google collects and retains data from non-Android devices that run Google apps if the user has enabled location sharing with Google. Google typically associates the collected location information with the Google account associated with the Android device and/or that is signed in via the relevant Google app. The location information collected by Google is derived from sources including GPS data,

6

information about the cell sites within range of the mobile device, and information about wi-fi access points and Bluetooth beacons within range of the mobile device.

19. Based on my training and experience, I also known that Google collects and retains information about the user's location if the user has enabled Google to track web and app activity. According to Google, when this setting is enabled, Google saves information including the user's location and Internet Protocol address at the time they engage in certain Internet- and app- based activity and associates this information with the Google account associated with the Android device and/or that is signed in with the relevant Google app.

20. Location data, such as the location data in the possession of Google, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected via the use of Google products as described above, mobile devices that were in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this information can inculpate or exculpate a Google account holder by showing that he was, or was not, near a given location at a time relevant to the criminal investigation.

21. Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my

7

experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

22. Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

## PROBABLE CAUSE

23. I review Postal Service records and labels delivered to, and sent from, the Milwaukee area to and from source narcotic areas. I do this because I know, based on my training and experience, drug traffickers will sometimes use USPS Priority Mail service, which is the USPS two-day delivery product. Based on my training and experience with the USPIS, I know drug traffickers use Priority Mail delivery service because of its reliability and the ability to track the article's progress to the intended delivery point. In my training and experience, traffickers will often use fictitious names and/or addresses as well as incomplete names and addresses in an attempt to hide their trafficking efforts from law enforcement.

8

24. On Thursday, August 1, 2019, I was conducting routine parcel screening at the USPS Priority Mail Processing Annex, located at 7620 S 10th Street, Oak Creek, WI 53154, when I deemed USPS Priority Mail parcel 9505513178739212362368 ("SUBJECT PARCEL 1") to be suspicious. The SUBJECT PARCEL 1 is approximately a 11.25" x 8.75" x 6" USPS medium flat rate parcel weighing approximately 4 lbs. 2 oz. The SUBJECT PARCEL 1's label indicates it is from "Jane Butter, 1050 W Pacific Coast Highway, Harbor City, CA. 90710." The SUBJECT PARCEL 1 bore a handwritten label addressed to "Mr & Mrs Butter, 3296 N. 11th St, Milwaukee, Wisconsin 53206." The SUBJECT PARCEL 1 was postmarked on July 31, 2019, at approximately 2:23 PM, in Redondo Beach, CA 90278. The postage paid was $14.35.

25. On August 2, 2019, I applied for and received a federal search warrant for the SUBJECT PARCEL 1. The Honorable Nancy Joseph, United States Magistrate Judge in the Easter District of Wisconsin, signed the warrant authorizing the search of the SUBJECT PARCEL 1.

26. Upon executing the search warrant of the SUBJECT PARCEL 1, on August 2, 2019, I discovered one bag containing a white powdery substance wrapped in several layers of saran wrap. I field tested the substance which showed the substance field tested positive for fentanyl. The suspected fentanyl had a gross weight of approximately 1127 grams.

27. I contacted the USPIS Los Angeles Division and requested surveillance video from the North Redondo Beach Post Office, located at 2215 Artesia Blvd, Redondo Beach, CA 90278, for July 31, 2019 at approximately 2:23 PM when the SUBJECT PARCEL 1 was postmarked. After reviewing the surveillance video, the suspect who shipped the SUBJECT PARCEL 1 can be described as a middle-aged African American male with a thin build, medium to dark complexion, little to no hair, and wearing a button-down shirt. The surveillance video also showed the African

9

American male retrieve what appeared to be a touch-screen device, similar in appearance to an iPhone or Android cellular phone, from his pocket and use the device. Based on my training and experience, I know that such touch-screen devices often use Google services, including email (Gmail), navigation (Google Maps), search engine (Google), online file storage (including Google Drive, Google Photos, and Youtube), messaging (Google Hangouts and Google Allo), and video calling (Google Duo). Furthermore, I know that individuals who use mobile devices, such as cellular phones, ordinarily keep them in close proximity and typically take them wherever they go.

28. According to reliable USPS business records, the SUBJECT PARCEL 1 was being tracked in a unique way by one or more subjects who also tracked USPS Priority Mail parcel 9505514312179203288113 ("SUBJECT PARCEL 2"). The SUBJECT PARCEL 2 was a USPS medium flat rate parcel weighing approximately 8 lbs. 4 oz. The shipping label for the SUBJECT PARCEL 2 indicated it was from "Mrs Robin McKay, 824 E. Highland, San Bernadino, CA.". The SUBJECT PARCEL 2 bore a handwritten label addressed to "Mr Mark McKay, 200 Merhants bl. Apt. 271, Lafayette, LA. 70508." The SUBJECT PARCEL 2 was postmarked July 22, 2019, at approximately 2:27 PM, in Pomona, CA 91769. The postage paid was $19.95. I compared the handwriting on the shipping labels for SUBJECT PARCEL 1 and SUBJECT PARCEL 2, and noted the handwriting appeared similar. In addition, the two parcels were USPS flat rate carboard boxes and both were sent from approximately the same area in California.

29. I reviewed surveillance video from the Pomona Post Office, located at 580 W Monterey Avenue, Pomona, CA 91769, for July 22, 2019 at approximately 2:27 PM when the SUBJECT PARCEL 2 was postmarked. After reviewing the surveillance video, the suspect who shipped the SUBJECT PARCEL 2 appeared to be the same suspect who shipped the SUBJECT PARCEL 1 (as described in paragraph 27).

30. Reliable USPS business records indicated the SUBJECT PARCEL 2 was being tracked in a unique way by one or more subjects who also tracked USPS Priority Mail parcel 9505514103769203232045 ("SUBJECT PARCEL 3") and USPS Priority Mail parcel 9505514103769203232038 ("SUBJECT PARCEL 4"). The SUBJECT PARCEL 3 was a USPS medium flat rate parcel weighing approximately 7 lbs. 3 oz. The shipping label for the SUBJECT PARCEL 3 indicated it was from "Gonzalo Topete, 8678 Utice Ave, Rancho Cucamonga, CA 91730.". The SUBJECT PARCEL 3 bore a handwritten label addressed to "Mr & Mrs Nicholas Larson, 4104 Le Clare St, Muskegon, Mi 49444." The SUBJECT PARCEL 3 was postmarked July 22, 2019, at approximately 1:54 PM, in Rancho Cucamonga, CA 91729. The postage paid was $19.95.

31. The SUBJECT PARCEL 4 was a USPS medium flat rate parcel weighing approximately 4 lbs. 1 oz. The shipping label for the SUBJECT PARCEL 4 indicated it was from "Gonzalo Topete, 8678 Utice Ave, Rancho Cucamonga, CA. 91730.". The SUBJECT PARCEL 4 bore a handwritten label addressed to "Nicholas Larson, 4104 Le Clare St, Muskegon, Mi 49444." The SUBJECT PARCEL 4 was postmarked July 22, 2019, at approximately 1:54 PM, in Rancho Cucamonga, CA 91729. The SUBJECT PARCEL 4 was postmarked at the same time and location as SUBJECT PARCEL 3. The postage paid was $19.95.

32. I again compared the handwriting on the shipping labels for SUBJECT PARCEL 1, 2, 3, and 4, and noted the handwriting appeared similar. In addition, all four parcels were USPS flat rate carboard boxes and all were sent from approximately the same area in California.

33. I reviewed surveillance video from the Rancho Cucamonga Post Office, located at 10950 Arrow Route, Rancho Cucamonga, CA 91729, for July 22, 2019 at approximately 1:54 PM when the SUBJECT PARCEL 3 and SUBJECT PARCEL 4 were postmarked. After reviewing

11

the surveillance video, the suspect who shipped the SUBJECT PARCEL 3 and SUBJECT PARCEL 4 appeared to be the same suspect who shipped the SUBJECT PARCEL 1 and SUBJECT PARCEL 2 (as described in paragraph 27).

34. The Consolidated Lead Evaluation and Reporting (CLEAR) database is a public records product which is designed for law enforcement officers in locating subjects and witnesses, verifying identities of individuals, and gathering background information for use in investigations. A search of the CLEAR database revealed SUBJECT PARCEL 1 and SUBJECT PARCEL 2 had fictitious sender names which were not associated with the sender's address shown on the shipping labels.

35. A search of the USPS database revealed the sender's address, 8678 Utice Avenue, Rancho Cucamonga, CA 91730, for SUBJECT PARCEL 3 and SUBJECT PARCEL 4, is a fictitious address.

36. Based on the foregoing, I submit that there is probable cause to search information in the possession of Google relating to what devices were in the Target Location described in Attachment A during the time period described in Attachment A, as well as information that identifies the Google accounts with which those devices are associated, for evidence of the crime(s) at issue in this case. Among other things, this information can inculpate or exculpate a Google account holder by showing that he was, or was not, near a given location at a time relevant to the criminal investigation.

37. In order to facilitate the manageable disclosure of and search of this information, the proposed warrant contemplates that Google will disclose the information to the government in stages rather than disclose all of the information for which the government has established probable cause to search at once. Specifically, as described in Attachment B.I:

a. Google will be required to disclose to the government an anonymized list of devices that specifies information including the corresponding unique device ID, timestamp, coordinates, and data source, if available, of the devices that reported their location within the Target Location described in Attachment A during the time period described in Attachment A.

b. The government will then review this list in order to prioritize the devices about which it wishes to obtain associated information.

c. Google will then be required to disclose to the government the information identifying the Google account(s) for those devices about which the government further inquires.

## CONCLUSION

38. Based on the forgoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c).

39. I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

13

## REQUEST FOR SEALING

1.	Pursuant to 18 USC §§ 3103a(b) and 2705, I am requesting delayed notice of 180 days. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice of the execution of this warrant would seriously jeopardize the ongoing investigation, as such a disclosure would give targets of the investigation an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). I believe this conclusion because the investigation involves the suspects shipping suspected multiple kilogram quantities of parcels containing suspected fentanyl via US mail, which, if made aware of this search warrant, may change their tactics and/or destroy evidence.

2.	Because the investigation is ongoing and its success would be jeopardized if the contents of this affidavit were made public, I am requesting this affidavit be sealed until further order of the court.

## ATTACHMENT A

### Property To Be Searched

This warrant is directed to Google LLC and applies to:

(1) location history data, sourced from methods including GPS, wi-fi, and Bluetooth, generated from devices and that reported a device location within the geographical region bounded by the latitudinal and longitudinal coordinates, dates, and times below ("Initial Search Parameters"); and

(2) identifying information for Google Accounts associated with the responsive location history data.

### Initial Search Parameters

- Search Parameter 1
  - Date: July 31, 2019
  - Time Period: Pacific Daylight Time – Between 2:15 PM to 2:30 PM
  - Target Location: Geographical area identified as the polygonal area within GPS coordinates (33.872918, -118.371670), (33.872909, -118.370883), (33.873653, -118.371520), (33.873676, -118.371217), (33.873341, -118.371211), (33.873345, -118.370924), (33.873177, -118.370908), (33.873168, -118.371265), and (33.872929, -118.371247).
    - This is the location of the North Redondo Beach Post Office.
- Search Parameter 2
  - Date: July 22, 2019
  - Time Period: Pacific Daylight Time – Between 2:20 PM to 2:35 PM
  - Target Location: Geographical area identified as the polygonal area within GPS coordinates (34.060102, -117.758817), (34.060225, -117.758790), (34.060258, -117.757980), and (34.060002, -117.757934)
    - This is the location of the Pomona Post Office.
- Search Parameter 3
  - Date: July 22, 2019
  - Time Period: Pacific Daylight Time – Between 1:45 PM to 2:00 PM
  - Target Location: Geographical area identified as the polygonal area within GPS coordinates (34.099343, -117.566098), (34.099922, -117.566060), (34.099913, -117.565382), and (34.099291, -117.565358).
    - This is the location of the Rancho Cucamonga Post Office.

## ATTACHMENT B

### Particular Items to Be Seized

### I. Information to be disclosed by Google

Google shall provide responsive data (as described in Attachment A) to the government pursuant to the following process:

1. Google shall query location history data based on the Initial Search Parameters specified in Attachment A.

2. For each location point recorded within the Initial Search Parameters, Google shall produce to the government anonymized information specifying the corresponding unique device ID, timestamp, coordinates, display radius, and data source, if available (the "Anonymized List").

3. The government shall review the Anonymized List in order to prioritize the devices about which it wishes to obtain identifying information.

4. Google is required to disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Account associated with each device ID about which the government inquires.

## II. Information to Be Seized

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance) and 846 (Conspiracy to Possess with Intent to Distribute and to Distribute a Controlled Substance) have been committed on July 22, 2019 and July 31, 2019 involving unknown persons.